**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLIN SHANKS, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>JARROW FORMULAS, INC.<br><br>Defendant. | Case No: 18-cv-9437<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR:**<br>**VIOLATIONS OF CAL. BUS. &**<br>**PROF. CODE §§17200** *et seq.***; CAL.**<br>**BUS. & PROF. CODE §§17500** *et seq.***;**<br>**CAL. CIV. CODE §§ 1750** *et seq.***.**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Collin Shanks, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues defendant Jarrow Formulas, Inc. ("Jarrow"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including through the investigation of his counsel.

## INTRODUCTION

1.     Jarrow markets various coconut oil Products  with labeling claims that both violate federal and California state food regulations and are misleading because, contrary to the message conveyed by the challenged labeling claims, the Products are not healthy but rather detriment health when consumed, increasing risk of cardiovascular disease, stroke, and other serious illnesses.

2.     Plaintiff relied upon Jarrow's misleading and unlawful claims when purchasing Jarrow coconut oil, and was damaged as a result. He brings this action on behalf of himself, all others similarly situated, and the general public, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, *id*. §§ 17500 *et seq*. ("FAL").

3.     Plaintiff seeks an order, *inter alia*, compelling Jarrow to (a) cease marketing its coconut oil Products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution, damages, and punitive damages as allowed by law.

## PARTIES

4.     Plaintiff Colin Shanks is a resident of West Covina California and a citizen of California.

5.     Defendant Jarrow Formulas, Inc. is a California Corporation, with its  principal place of business in Los Angeles, California.

1

## JURISDICTION & VENUE

6.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and because more than two-thirds of the members of the Class reside in states other than the states of which Defendant is a citizen.

7.    The Court has personal jurisdiction over Jarrow because it's principal place of business is in Los Angeles, it has significant, systematic, and continuous business operations in California, and has purposely availed itself of the benefits and privileges of conducting business activities within California.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and suffered injuries as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant (1) is authorized to conduct business in this District, (2) has intentionally availed themselves of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Products in this District, and (3) are subject to personal jurisdiction in this District.

## FACTS

### I.    Saturated Fat Consumption Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

#### A.    The Role of Cholesterol in the Human Body

9.    Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high density lipoproteins, or HDL cholesterol.

10.    LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

11.    HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

**B.**    **High Total and LDL Blood Cholesterol Levels are Associated with Increased Risk of Morbidity, Including Coronary Heart Disease and Stroke**

12.    Total and LDL cholesterol blood levels are two of the most important risk factors in predicting coronary heart disease (CHD), with higher total and LDL cholesterol levels associated with increased risk of CHD.[1]

13.    High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[2] That is, if there is too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

14.    This process can happen to the coronary arteries in the heart and restricts the provision of oxygen and nutrients to the heart, causing chest pain or angina.

15.    When atherosclerosis affects the coronary arteries, the condition is called coronary heart disease.

16.    Cholesterol-rich plaques can also burst, causing a blood clot to form over the plaque, blocking blood flow through arteries, which in turn can cause an often-deadly or debilitating heart attack or stroke.

---

[1] *See*, *e.g.*, Dr. Dustin Randolph, *Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke* (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), *available at* http://www.pursueahealthyyou.com/2015/04/coconut-oil-increases-cardiovascular.html.

[2] USDA Center for Nutrition Policy and Promotion, *Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence*, Nutrition Insight 44 (July 2011) [hereinafter, "USDA, Review of the Evidence"], *available at* http://www.cnpp.usda.gov/sites/default/files/nutrition_insights_uploads/Insight44.pdf.

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

17.    Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single most important thing to do."[3]

**C.    Saturated Fat Consumption Causes Increased Total and LDL Blood Cholesterol Levels, Increasing the Risk of CHD and Stroke**

18.    The consumption of saturated fat negatively affects blood cholesterol levels because the body reacts to saturated fat by producing cholesterol. More specifically, saturated fat consumption causes coronary heart disease by, among other things, "increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol."[4]

19.    Moreover, "[t]here is a positive linear trend between total saturated fatty acid intake and total and low density lipoprotein (LDL) cholesterol concentration and increased risk of coronary heart disease (CHD)."[5]

20.    This linear relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community.

21.    For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[6]

22.    In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake

---

[3]    Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at* https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-bad-for-you.html.

[4] USDA Review of the Evidence, *supra* n.2.

[5] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM, Dietary Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

[6] USDA Review of the Evidence, *supra* n.2.

of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[7]

23.    Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[8]

24.    For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[9]

25.    In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[10]

26.    Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[11]

27.    For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[12]

---

[7] IOM, Dietary Reference Intakes, *supra* n.5, at 481.

[8] *Id.* at 422.

[9] *Id.*

[10] *Id.* at 460.

[11] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001) [hereinafter "Mendis, Coconut fat"].

[12] USDA Review of the Evidence, *supra* n.2.

28.    The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories."[13] And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[14]

29.    In short, consuming saturated fat increases the risk of CHD and stroke.[15]

**D.    In Contrast to Saturated Fat, the Consumption of Dietary Cholesterol has No Impact on Blood Cholesterol Levels**

30.    For many years, there has been a common misperception that dietary cholesterol affects blood cholesterol levels. According to the USDA and Department of Health and Human Services (DHHS), however, "available evidence shows no appreciable relationship between consumption of dietary cholesterol and serum cholesterol."[16]

31.    In fact, the USDA and DHHS have concluded that "Cholesterol is not a nutrient of concern for overconsumption."[17]

32.    In contrast, the USDA and DHHS state that "[s]trong and consistent evidence from [randomized control trials] shows that replacing [saturated fats] with unsaturated fats, especially [polyunsaturated fats], significantly reduces total and LDL cholesterol."[18]

---

[13] *Id.*

[14] *Id.*

[15] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[16] USDA & DHHS, *Dietary Guidelines for Americans*, Part D., Chapter 1, at 17 (2015) [hereinafter "USDA & DHHS, Dietary Guidelines"], *available at* http://health.gov/dietaryguidelines/2015-scientific-report/pdfs/scientific-report-of-the-2015-dietary-guidelines-advisory-committee.pdf.

[17] *Id.*

[18] *Id.* Part D, Chapter 6, at 12.

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

33.   Therefore, the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, ***and coconut oils***)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)."[19]

## II.   Because of its High Saturated Fat Content, the Consumption of Coconut Oil Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

34.   Although it is well established that diets generally high in saturated fatty acids increase the risk of CHD,[20] several studies have specifically shown that consuming coconut oil—which is approximately 90 percent saturated fat—increases the risk of CHD and stroke.

35.   For example, in 2001 the British Journal of Nutrition published a 62-week intervention study that examined the "effect of reducing saturated fat in the diet . . . on the serum lipoprotein profile of human subjects."[21] The study had two intervention phases. In Phase 1 (8 weeks), "the total fat subjects consumed was reduced from 31 to 25 % energy . . . by reducing the quantity of coconut fat (CF) in the diet from 17.8 to 9.3 % energy intake."[22] "At the end of Phase 1, there was a 7.7 % reduction in cholesterol and 10.8 % reduction in LDL and no significant change in HDL and triacylglycerol."[23]

36.   In Phase 2 (52 weeks), the total fat consumed by subjects was reduced from 25 to 20 % energy by reducing the coconut fat consumption from 9.3 to 4.7 % energy intake.[24]

---

[19] *Id.* (emphasis added).

[20] *See* Mendis, Coconut fat, *supra* n.11, at 583.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

At the end of phase 2, these subjects exhibited a 4.2% mean reduction of total cholesterol and an 11% mean reduction in LDL cholesterol.[25]

37.    The authors of the study noted that "[a] sustained reduction in blood cholesterol concentration of 1 % is associated with a 2-3 % reduction of the incidence of CHD (Law et al. 1994)." Further, "[i]n primary prevention, a reduction of cholesterol by 20% has produced a 31% reduction in recurrent coronary morbidity, a 33% reduction in coronary mortality, and 22% less total mortality (Grundy, 1997)."[26]

38.    Based on these relationships, the researchers estimated that "the reduction in coronary morbidity and mortality brought about by the current dietary intervention would be of the order of about 6-8 %."[27]

39.    Simply put, the results of the yearlong study showed that reducing coconut oil consumption "results in a lipid profile that is associated with a low cardiovascular risk."[28]

40.    The detrimental health effects of consuming coconut oil are not limited to long-term consumption. To the contrary, a 2006 study published in the Journal of the American College of Cardiology found that consuming a single high-fat meal containing fat from coconut oil "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[29] In the study, researchers examined the effect of consuming a single isocaloric meal that contained "1 g of fat/kg of body weight," with "coconut oil (fatty acid composition: 89.6% saturated fat, 5.8% monounsaturated, and 1.9% polyunsaturated fat)" as the source of

---

[25] *Id.* at 586.

[26] *Id.* at 588.

[27] *Id.*

[28] *Id.* at 587.

[29] Stephen J. Nicholls et al., *Consumption of Saturated Fat Impairs the Anti-Inflammatory Properties of High-Density Lipoproteins and Endothelial Function*, 48 J. Am. Coll. Cardio. 715 (2006).

fat.[30] They found that consuming the coconut oil meal significantly "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[31] In contrast, when the fat from the same isocaloric meal came from "safflower oil (fatty acid composition: 75% polyunsaturated, 13.6% monounsaturated, and 8.8% saturated fat)," "the anti-inflammatory activity of HDL improve[d]."[32]

41.    Other studies have similarly demonstrated that coconut oil consumption negatively affects blood plasma markers when compared to other fats.

42.    A 2011 study published in the American Journal of Clinical Nutrition found that consuming coconut oil, unlike consuming palm olein and virgin olive oil, decreased postprandial lipoprotein(a), which is associated with an increased the risk of cardiovascular disease.[33]

43.    Similarly, a study comparing the effects of consuming coconut oil, beef fat, and safflower oil found that coconut oil consumption had the worst effect on subjects' blood lipid profiles.[34] The authors noted that "[o]f these fats, only CO [coconut oil] appears to consistently elevate plasma cholesterol when compared with other fats."[35]

44.    Finally, in another study, researchers found that that subjects who consumed 30 percent of energy from fat, with 66.7% coming from coconut oil, had "increased serum

---

[30] *Id.*

[31] *Id.*

[32] *Id.* at 715.

[33] P.T. Voon et al., *Diets high in palmitic acid (16:0), lauric and myristic acids (12:0 + 14:0), or oleic acid (18:1) do not alter postprandial or fasting plasma homocysteine and inflammatory markers in healthy Malaysian adults*, 94 Am. J. Clin. Nutr. 1451 (2011).

[34] Raymond Reiser et al., *Plasma lipid and lipoprotein response of humans to beef fat, coconut oil and safflower oil*, 42 Am. J Clin. Nutr. 190, 190 (1985).

[35] *Id.*

cholesterol, LDL, and apo B."[36] (Apo B is a protein involved in the metabolism of lipids and is the main protein constituent of VLDL (very low-density lipoproteins) and LDL. Concentrations of apo B tend to mirror those of LDL, so the higher the level of apo B, the greater the risk of heart disease.) In sum, the study found that consuming coconut oil increased all three cholesterol markers, signifying an increased risk of cardiovascular disease.[37]

45.    In short, as the American Heart Association recently and succinctly stated, "because coconut oil increases LDL cholesterol, a cause of [cardiovascular disease], and has no known offsetting favorable effects, we advise against the use of coconut oil."[38]

## III.    Jarrow's Manufacture, Marketing, and Sale of Coconut Oil

### A.    Jarrow's History and Sale of Coconut Oil

46.    In approximately 2004, Jarrow began selling coconut oil, and has distributed, marketed, and sold various coconut oil Products on a nationwide basis for at least the past several years.

47.    The Products are sold an major national retailers such as Sprouts Farmers Market.

48.    Jarrow Formulas, Inc. coconut oil Products challenged in this lawsuit include at least the following, which are depicted below: (a) Organic Extra Virgin Coconut Oil, and (b) Coconut Oil.

---

[36] V. Ganji & C.V. Kies, *Psyllium husk fiber supplementation to the diets rich in soybean or coconut oil: hypercholesterolemic effect in healthy humans*, 47 Int. J. Food Sci. Nutr. 103 (Mar. 1996).

[37] *Id.*

[38] American Heart Association, Dietary Fats and Cardiovascular Disease: A Presidential Advisory From the American Heart Association, Circulation (June 15, 2017), *available at* http://circ.ahajournals.org/content/early/2017/06/15/CIR.0000000000000510.




49.     Jarrow's coconut oil Products are available in at least two sizes, 16 fl. oz. and 32 fl. oz., and regularly sell for between approximately $12 and $35. The labels for each size are substantially similar and bear the same challenged claims in the same manner.

**B.     The Composition of Jarrow's Virgin Coconut Oil**

50.     The Nutrition Facts box and Ingredients list on Jarrow Formulas Organic Extra Virgin Coconut Oil, and Jarrow Formulas Coconut Oil, respectively, are pictured below. Each 1 tablespoon (or 14g) serving of Jarrow coconut oil contains 130 calories, all of which come from fat: in each 14-gram serving there are 14 grams of fat. Further, each 14-gram serving contains 13 grams of saturated fat. In other words, Jarrow's Coconut Oil is 93 percent saturated fat.

| Nutrition Facts | | |
|---|---|---|
| Serving Size: 1 Tbsp. (14 g) | | |
| Servings per Container: Approx 32 | | |
| | Amount Per Serving | % Daily Value |
| Calories | 130 | |
| Fat Calories | 130 | |
| Total Fat | 14 g | 22% |
| Saturated Fat | 13 g | 65% |
| Trans Fat | 0 g | |
| Polyunsaturated Fat | 0.5 g | |
| Monounsaturated Fat | 0.5 g | |
| Cholesterol | 0 mg | 0% |
| Sodium | 0 mg | 0% |
| Total Carbohydrate | 0 g | 0% |
| Protein | 0 g | 0% |
| Not a significant source of Vitamin A, C, iron or Calcium. | | |

Other Ingredients: 100% unrefined expeller pressed, organic, extra virgin coconut oil.
PRODUCT OF THE PHILIPPINES

Extra Virgin Coconut Oil

| Nutrition Facts | | |
|---|---|---|
| Serving Size: 1 Tbsp. (14 g) | | |
| Servings per Container: Approx 32 | | |
| | Amount Per Serving | % Daily Value |
| Calories | 130 | |
| Fat Calories | 130 | |
| Total Fat | 14 g | 22% |
| Saturated Fat | 13 g | 65% |
| Trans Fat | 0 g | |
| Polyunsaturated Fat | 0.5 g | |
| Monounsaturated Fat | 0.5 g | |
| Cholesterol | 0 mg | 0% |
| Sodium | 0 mg | 0% |
| Total Carbohydrate | 0 g | 0% |
| Protein | 0 g | 0% |

Other Ingredients: 100% Expeller pressed, organic coconut oil.

Coconut Oil

**C.    Jarrow Markets its Coconut Oil Products with Misleading Health and Wellness Claims**

51.    Consumers are generally willing to pay more for foods they perceive as being healthy, or healthier than other alternatives. For instance, Nielsen's 2015 Global Health &

Wellness Survey found that "88% of those polled are willing to pay more for healthier foods."[39]

52.     Jarrow is well aware of consumer preference for healthful foods, and therefore employs and has employed a strategic marketing campaign intended to convince consumers that its coconut oil Products are healthy or at least not harmful to health, despite that consuming coconut oil, which is almost entirely saturated fat, increases risk of cardiovascular disease, stroke, and other serious diseases.

53.     When Jarrow first began selling coconut oil in approximately June 2004, as depicted below, its website claimed that its coconut oil is a "healthy, naturally saturated vegetable Product" that contains "good fat," and "is made up mostly of medium chain fatty acids, which the body metabolizes efficiently and converts into energy rather than storing as fat." "Coconut oil does not elevate your 'bad' cholesterol levels (LDL) and is slightly lower in calories than most vegetable oils."

---

[39] Nancy Gagliardi, *Consumers Want Healthy Foods—and Will Pay More for Them*, Forbes Feb. 18, 2015, *available at* https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#df73fba75c55



54.    For many years, including during the class period and into at least 2017, Jarrow's website claimed the Products were  a "Great Source of Healthy MCT's" and placed them under the "Cardiovascular Health" category on its website.

55.    As of March, 2018, Jarrow's website continued to claim that the Products were a "Great Source of Healthy MCT's".

56.    These and similar statements on the Jarrow website, the URL of which is expressly set forth on the Jarrow coconut oil Product labels, are false and misleading because the Jarrow coconut oils are in fact unhealthy, contributing to increased risk of CHD and other mortality.

57.    In addition, Jarrow markets and advertises the Products with claims placed directly on their labeling that are intended to convince consumers that the Products are healthy

or at least will not detriment health. As with the claims on its website, Jarrow highlights the presence of supposedly healthy fats, specifically, Medium Chain Triglycerides (MCTs) and the absence of trans fat, which consumers understand to be an unhealthy type of fat. By highlighting the presence of supposedly good fats and the absence of unhealthy trans fat, Jarrow creates the impression to average consumers that the Products are healthy or at least will not detriment health. This is misleading because coconut oil increases risk of serious diseases and has no offsetting favorable effects.

58.    **Misleading Medium Chain Triglyceride (MCT) Claims.** Directly on the labeling of the Products, Jarrow claims that the Products are a "Source of Medium Chain Triglycerides" and "Coconut oil is a source of medium chain triglycerides (MCTs), such as lauric acid (C-12) and caprylic acid (C-8)." By highlighting the presence of supposedly "healthy" MCTs, Jarrow purposefully and misleadingly creates what is called a "'health halo[],' in which a claim about single healthy quality gives rise to more positive impression of other, nonclaimed qualities."[40] As explained by Natalie Allen, clinical faculty member of the Biomedical Sciences Department at Missouri State University, "[t]he health halo effect is an phenomenon in which a food or food company is perceived as healthy based on one claim."[41] "Research has consistently found that claims on food Product labels have halo effects (Andrews et al., 2011); they have a positive effect on consumers' perceptions about Product characteristics not mentioned in the claim (Andrews et al., 2011; Schuldt, 2013)."[42]

---

[40] Catherine Fernan *et al., Health Halo Effects from Product Titles and Nutrient Content Claims in the Context of "Protein" Bars*, Health Communication, at 2 (August 30, 2017), *available at* http://dx.doi.org/10.1080/10410236.2017.1358240.

[41] Melissa Kravitz, "*Brands use this psychological trick to make you think you're buying 'healthy' foods*", (April 18, 2017), *available at*: https://mic.com/articles/173866/brands-use-this-psychological-trick-to-make-you-think-you-re-buying-healthy-foods#.GIe05Cjk2

[42] Irina A. Iles *et al., Nutrient Content Claims: How They Impact Perceived Healthfulness of Fortified Snack Foods and the Moderating Effects of Nutrition Facts Labels, Health Communication*, Health Communication, at 1 (August 20, 2017) ("Results indicated that the

Specifically, surveys have shown that "[c]onsumers who viewed a favorable nutrient content claim had significantly more favorable evaluations of fat content and healthiness. (internal examples omitted)."[43] Thus, by highlighting the presence of MCTs, which Jarrow long described as healthy, it created the misleading impression that the Products were as a whole also healthy.

59.    Jarrow's claim that "[c]oconut oil is a source of medium chain triglycerides (MCTs), such as lauric acid (C-12) and caprylic acid (C-8)" is further misleading because lauric acid is not properly characterized as a medium chain triglyceride or fatty acid. To the contrary, lauric acid "behaves more as a long-chain fatty acid [in terms of digestion and metabolism] because the majority of it (70%–75%) is absorbed with chylomicrons." "It is therefore inaccurate to consider coconut oil to contain either predominantly medium-chain fatty acids or predominantly medium-chain triglycerides."[44] "A common misconception is that the SAFA [saturated fatty acids] in coconut oil are mainly medium chain fatty acids [MCTs], which are metabolized differently from long-chain SAFA. Actually, coconut oil is mainly C12:0 lauric acid and C14:0 myristic acid, which have potent LDL-C-raising effects."[45] By both highlighting the presence of MCTs and characterizing lauric acid as an

---

presence of an [Nutrient Content Claim] on a fortified snack food product increased perceived healthfulness of that product, perceptions of the presence of healthful nutrients, and intentions to consume the product. The presence of NCCs also decreased perceptions of the presence of certain less healthful nutrients"), *available at* http://dx.doi.org/10.1080/10410236.2017.1351277.

[43] J. Craig Andrews *et al.*, *Consumer Generalization of Nutrient Content Claims in Advertising*, 62 J. Marketing 62, 67 (Oct. 1998).

[44] Eyres L. *et al.*, *Coconut oil consumption and cardiovascular risk factors in humans*, 74 Nutr. Rev. 267 (2016).

[45] Zock PL., *et al.*, *Progressing Insights into the Role of Dietary Fats in the Prevention of Cardiovascular Disease*, Curr. Cardiol. Rep. 2016;18(11):111.

MCT, Jarrow further misleads consumers in an attempt to convey that the Products are healthy.

60.    Is conjunction with its MCT statements, Jarrow prominently labels the Products with the phrases "NO TRANS FATTY ACIDS (TFAs)", and "NO HYDROGENATION". As with the MCT statements, by highlighting the absence of unhealthy trans fat, Jarrow creates a "health halo." Indeed it is well established that when "consumers who view[] a favorable nutrient content claim had significantly more favorable evaluations of fat content and healthiness. (internal examples omitted)."[46]

61.    In short, by highlighting the presence of supposedly "healthy" MCTs and the absence of unhealthy trans fat, Jarrow creates a health halo regarding the Products as a whole, which is misleading because, in the words of the American Heart Association, "coconut oil increases LDL cholesterol, a cause of [cardiovascular disease], and has no known offsetting favorable effects . . . ."[47]

62.    Thus, the totality of the Jarrow coconut oil Products' labeling conveys the message to a reasonable consumer that the Products are healthy or at least won't detriment

---

[46] Id. See also J. Craig Andrews et al., Is Simpler Always Better? Consumer Evaluations of Front-of-Package Nutrition Symbols, 30 J. Public Policy & Marketing 175, 176 (Fall 2011) ("Favorable effects of simplified indicators of health are consistent with the tenets of heuristic or peripheral route processing (e.g., Eagley and Chaiken 1993; Petty and Cacioppo 1986). When faced with a complex decision environment, peripheral cues or heuristics can reduce the effort needed in processing nutrition information and allow the consumer to make judgments and evaluations based on the simplified cue or heuristic (Eagly and Chaiken 1993, p. 330). In addition, halo effects (Nesbett and Wilson 1977) are likely, in that the presence of the FOP [front of package] nutrition symbol can lead consumers to generalize that the product is more favorable on other nutrition elements not explicitly identified in the FOP symbol (Roe, Levy, and Derby 1999, p. 91). Such halo effects have occurred in the case of health claims (Roe , Levy,and Derby 1999) and nutrient content claims in advertising (Andrews, Netemeyer, and Burton 1998).").

[47] American Heart Association, Dietary Fats and Cardiovascular Disease: A Presidential Advisory From the American Heart Association, Circulation (June 15, 2017), available at http://circ.ahajournals.org/content/early/2017/06/15/CIR.0000000000000510.

health. Jarrow intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

63.     In addition to these affirmative misleading representations, Jarrow regularly and intentionally omits material information regarding the amount and dangers of consuming the Products. Jarrow is under a duty to disclose this information to consumers because (a) Jarrow is revealing *some* information about its Products—enough to suggest they are healthy or conducive to good physical health—without revealing additional material information—that the Products actually have detrimental health effects, (b) Jarrow's deceptive omissions concern human health, and specifically the detrimental health consequences of consuming its Products, (c) Jarrow was in a superior position to know of the dangers presented by the Products, as it is a large, well-funded company that claims the "goal of Jarrow Formulas is to promote optimal health" and "[o]ur staff of scientists and health professionals are actively involved in clinical studies and continually work with researchers from universities and institutes around the world"[48] and (d) Jarrow actively concealed material facts not known to Plaintiff and the Class.

64.     As described above, in marketing its Products, Jarrow uses affirmative representations to suggest its Products are healthy or at least not detrimental to health, which is misleading given that consuming coconut oil increases the risk of cardiovascular disease and other serious illnesses. In light of these voluntary statements, Jarrow therefore has a duty to disclose information regarding the harmful effects of the Products.

---

[48] Jarrow Formulas, https://jarrowonline.com/pages/about-jarrow-formulas (last visited Nov. 6, 2018).

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

**IV.    The Labeling of Jarrow's Coconut Oil Products Violates California and Federal Law**

    **A.    Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law**

65.    Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food labeling requirements as its own, *see id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto.").

66.    The Federal Food Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

67.    Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

    **B.    The Jarrow Coconut Oil Labeling Claims Render the Products Misbranded Under California and Federal Law**

68.    Jarrow's deceptive statements described herein violate Cal. Health & Safety Code § 109875, and 21 U.S.C. § 343(a), which deem a food misbranded if its labeling is "false or misleading in any particular."

69.    In addition, the labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

70.    In addition, Jarrow's voluntary and affirmative misrepresentations challenged herein also "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming the Products.

19

71.    Jarrow similarly failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Jarrow failed to disclose the increased risk of serious chronic disease likely to result from the usual consumption of its Products.

**C.    The Jarrow Coconut Oils are Misbranded Because They Make Unauthorized Nutrient Content Claims**

72.    The Jarrow coconut oils are misbranded because their labels bear nutrient content claims even though the Products do not meet the requirements to make such claims.

73.    Under 21 U.S.C. § 343(r)(1)(A), a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. *See also* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

74.    Characterizing the level of a nutrient on food labels and labeling of a Product without complying with the specific requirements pertaining to nutrient content claims for that nutrient renders the Product misbranded under 21 U.S.C. § 343(r)(1)(A).

75.    The Jarrow coconut oil labels bore or bear the statements "Source of Medium Chain Triglycerides" and "Coconut oil is a source of medium chain triglycerides (MCTs), such as lauric acid (C-12) and caprylic acid (C-8)." These statements meet the definition of a nutrient content claim because they characterize the level of fatty acids in the Products, which are nutrients of the type required to be in nutrition labeling. *See* 21 C.F.R. § 101.13(b)(2)(i) (An implied nutrient content claim is defined as any claim that "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount.").

76.    Under 21 C.F.R. § 101.13(h), a food that bears a nutrient content claim, express or implied, that contains more than 13 grams of total fat or 4 grams of saturated fat per serving

20

or RACC, must also bear a disclosure statement on the label, immediately adjacent to the claim, referring the consumer to nutrition information for that nutrient, *e.g.*, "See nutrition information for total fat and saturated fat content." 21 C.F.R. § 101.13(h)(1).

77.    The RACC for oils, including the Jarrow coconut oils, is 1 tablespoon (15ml or 14g). *See* 21 C.F.R. § 101.12(b) (Reference Amount Customarily Consumed for specific foods, "Fats and Oils: Butter, margarine, oil, shortening).

78.    According to the Products' labels, they contain 14 grams of total fat and 13 grams of saturated fat per 1 tablespoon serving.

79.    Jarrow's use of these claims regarding the Products' Medium Chain Triglyceride content violates 21 C.F.R. § 101.13(h) because the Products exceed the disclosure levels, containing both "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled serving, and 50g, but fail to make, immediately adjacent to the claim, the disclosure statement, "See nutrition information for fat and saturated fat content." *See* 21 C.F.R. §§ 101.13(h)(1), (4)(ii).

80.    Because the Products exceed the disclosure levels for total fat and saturated fat and fail to include the disclosure statement, the Products are misbranded and therefore also unlawful.

81.    In addition, despite that the Jarrow coconut oils contain 14 grams of total fat and 13 grams of saturated fat, the Products fail to bear these mandatory disclosure statements which provide consumers with material nutrition information. Therefore, the Products are misbranded as failing to reveal facts that are material in light of representations made. *See* 21 C.F.R. § 1.21.

82.    The Jarrow coconut oil Products are also misbranded because their labels bears the phrases "No Trans Fatty Acids" and "No Hydrogenation," which constitute unauthorized nutrient content claims because they characterize the Products' level of trans fat, but the FDA has not defined or authorized nutrient content claims for trans fat, and in fact has expressly declined to authorize any such claims.

## IV.    Plaintiff's Purchase, Reliance and Injury

83.    Plaintiff Collin Shanks has purchased Jarrow Organic Extra Virgin Coconut Oil approximately six to eight times in 16-fluid-ounce jars. To the best of his recollection, Plaintiff began purchasing Jarrow Organic Extra Virgin Coconut Oil in 2016, from local Sprouts Farmers Markets, such as the one located at 1431 Imperial Highway in La Habra, California and other local vitamin or health stores. Plaintiff believes he paid approximately $12-14 for each jar.

84.    When deciding to purchase Jarrow Organic Extra Virgin Coconut Oil, Plaintiff read and relied on the following claims contained on the Jarrow Organic Extra Virgin Coconut Oil's label:

>    a.    "Source of Medium Chain Triglycerides";

>    b.    "No Trans Fatty Acids";

>    c.    "No Hydrogenation"; and

>    d.    "Coconut oil is a source of medium chain triglycerides (MCTs), such as lauric acid (C-12) and caprylic acid (C-8)."

85.    These representations, which highlighted the presence of supposedly healthy Medium Chain Triglycerides and the absence of harmful trans fatty acids, created the impression that the Product was healthy or at least would not detriment his health, and Plaintiff relied on these claims in purchasing the Product.

86.    When purchasing Jarrow Organic Extra Virgin Coconut Oil, Plaintiff was seeking a Product that had the qualities expressly described and implied by the Product's label, namely, a non-hydrogenated coconut oil that was free of trans fatty acids and was a source of Medium Chain Triglycerides, and the consumption of which would benefit rather than harm health.

87.    These representations, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class members) because, as described in detail

herein, the Jarrow coconut oils are not healthy, but instead their consumption increases the risk of CHD, stroke, and other morbidity.

88. Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Jarrow had regarding the health effects of consuming its coconut oils.

89. Plaintiff acted reasonably in relying on the challenged claims which create a health halo and that Jarrow intentionally placed on the Products' labeling with the intent to induce average consumers into purchasing the Products.

90. Jarrow coconut oils cost more than similar Products without misleading labeling, and/or would have cost less in the marketplace (i.e., would have demanded a lower price) absent the false and misleading statements complained of herein.

91. Plaintiff paid more for Jarrow Organic Extra Virgin Coconut Oil, and would only have been willing to pay less, or unwilling to purchase the Product at all, absent the false and misleading labeling complained of herein.

92. For these reasons, Jarrow Organic Extra Virgin Coconut Oil was worth less than what Plaintiff paid for it.

93. Instead of receiving a Product that had actual healthful qualities, the Products that Plaintiff and the Class received were not healthy, but rather their consumption causes increased risk of CHD, stroke, and other morbidity.

94. Plaintiff would not have purchased Jarrow Organic Extra Virgin Coconut Oil if he knew the Product was misbranded pursuant to California and FDA regulations, or that its claims were false and misleading.

95. Plaintiff lost money as a result of Jarrow's deceptive claims and practices in that he did not receive what he paid for when purchasing Jarrow Organic Extra Virgin Coconut Oil.

96. Plaintiff detrimentally altered his position and suffered damages in an amount equal to the amount he paid for the Product.

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

97.    Plaintiff remains in the market for, and interested in purchasing healthy cooking oils.

98.    He regularly shops at stores such as Sprouts where the Products are sold.

99.    If he encountered the Products containing the same or similar labeling claims in the future, he might reasonably assume that the Products had been reformulated to make them healthier, or that new scientific evidence supported the claims, and on that basis would consider and likely be interested in purchasing the Products again. Without prospective injunctive relief requiring Jarrow to label the Products in a truthful manner, he and other consumers will be unable to determine whether a future label bearing similar claims is valid, or whether Jarrow has simply resumed misleading behavior, and thus will be unable to decide how best to spend his money.

100.    The continued use of the challenged claims on the Products' labels threatens to repeatedly infringe upon the substantive right California's consumer protection statutes give Plaintiff to be free from fraud in the marketplace.

101.    The senior officers and directors of Jarrow allowed the Jarrow coconut oil Products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## CLASS ACTION ALLEGATIONS

102.    While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a Class of all persons in the United States who purchased the Products not more than four years prior to the filing of this Complaint (the "Class Period"), for personal or household use, and not for resale or distribution purposes (the "Class").

103.    The Products are sold on a nationwide basis to thousands of consumers and members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

104.    Questions of law and fact common to Plaintiff and the Class include:

a.      whether Jarrow communicated a message regarding healthfulness of the Products through its packaging and advertising;

b.      whether that message was material, or likely to be material to a reasonable consumer;

c.      whether the challenged claims discussed above are false, misleading, or reasonably likely to deceive a reasonable consumer, because of the high saturated fat content of the Jarrow coconut oils;

d.      whether Jarrow's conduct violates public policy;

e.      whether Jarrow's conduct violates state or federal food statutes or regulations;

f.      the proper amount of damages, including punitive damages;

g.      the proper amount of restitution;

h.      the proper injunctive relief, including a corrective advertising campaign; and

i.      the proper amount of attorneys' fees.

105.    These common questions of law and fact predominate over questions that affect only individual Class Members.

106.    Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Jarrow's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the challenged Products, and suffered economic injury because the Products were and are misrepresented. Absent Jarrow's business practice of deceptively and unlawfully labeling its coconut oil Products, Plaintiff and Class Members would not have purchased the Jarrow coconut oil Products.

107.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods.

108.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

109.   Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

110.   Defendant has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

111.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

112.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

113.   The acts, omissions, misrepresentations, practices, and non-disclosures of Jarrow as alleged herein constitute business acts and practices.

### Fraudulent

114.   A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

115.   As set forth herein, Jarrow's claims relating to its coconut oil Products are likely to deceive reasonable consumers and the public.

### Unlawful

116.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

• The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

• The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

• The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

26

- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

**Unfair**

117. Jarrow's conduct with respect to the labeling, advertising, and sale of its coconut oil Products was and is unfair because Jarrow's conduct was and is immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

118. Jarrow's conduct with respect to the labeling, advertising, and sale of the coconut oil Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

119. Jarrow's conduct with respect to the labeling, advertising, and sale of the coconut oil Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

120. Jarrow profited from its sales of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

121. Plaintiff and Class Members are likely to continue to be damaged by Jarrow's deceptive trade practices because absent a court order Jarrow is free to continue to disseminate misleading information. Thus, injunctive relief enjoining Jarrow's deceptive practices is proper.

122. Jarrow's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Jarrow's unlawful conduct.

123. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Jarrow from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

27

124.    Plaintiff, on behalf of himself and the Class, also seeks an order for restitution of all monies from the sale of Jarrow's coconut oils, which were unjustly acquired through acts of unlawful competition.

**SECOND CAUSE OF ACTION**

**Violations of the False Advertising Law,**

**Cal. Bus. & Prof. Code §§ 17500 *et seq.***

125.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

126.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

127.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

128.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Jarrow relating to its coconut oils misled consumers acting reasonably as to the healthfulness of the Products.

129.    Plaintiff suffered injury in fact as a result of Jarrow's actions as set forth herein because Plaintiff purchased the Jarrow coconut oil in reliance on Jarrow's misleading marketing claims that convey that the Products are healthy or at least will not detriment health.

130.    Jarrow's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Jarrow has advertised its Products in a manner that is untrue and misleading, which Jarrow knew or reasonably should have known, and omitted material information from its advertising.

131.    Jarrow profited from its sales of the falsely and deceptively advertised coconut oil Products to unwary consumers.

132.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Jarrow was unjustly enriched.

133.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Jarrow from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**THIRD CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

134.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

135.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

136.   Jarrow's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of its Products for personal, family, or household purposes by Plaintiff and other members of the Class, and thereby violated and continue to violate at least the following sections of the CLRA:

  a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

  b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

  c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

  d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

29

*Shanks v. Jarrow Formulas, Inc.*

<span style="font-variant: small-caps;">Class Action Complaint</span>

137.    Jarrow profited from its sales of the falsely, deceptively and unlawfully advertised coconut oil Products to unwary consumers.

138.    As a result, Plaintiff and the Class have suffered harm, and therefore seek (a) actual damages in the amount of the total retail sales price of the Jarrow coconut oils sold throughout the Class Period to all Class Members, (b) punitive damages in an amount sufficient to deter and punish, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, and (d) restitution.

139.    Jarrow's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA as the Products with the misleading claims remain on the market as of the time of the filing of the Complaint.

140.    Pursuant to California Civil Code § 1782, on July 10, 2018, Plaintiff sent written notice to Jarrow of his claims, but Jarrow failed to remedy the violations within 30 days thereafter.

141.    Jarrow failed to implement the demanded remedial measures, including providing refunds to consumers or perform a corrective advertising campaign to alert Class Members of its unlawful and misleading labeling practices. Accordingly, Plaintiff, on behalf of himself and the Class, seeks injunctive relief under Civil Code § 1782(d), as well as restitution, actual and punitive damages, including attorneys' fees.

142.    In compliance with Cal. Civ. Code § 1780(d), Plaintiff's affidavit(s) of venue is filed concurrently herewith, and is attached hereto as Exhibit 1.

## **PRAYER FOR RELIEF**

143.    Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Jarrow as to each and every cause of action, and the following remedies:

    A.    An Order declaring this action to be a proper class action and appointing undersigned counsel as class counsel;

    B.    An Order requiring Jarrow to bear the cost of class notice;

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

C.    An Order compelling Jarrow to conduct a corrective advertising campaign;

D.    An Order compelling Jarrow to destroy all misleading and deceptive advertising materials and Product labels;

E.    An Order requiring Jarrow to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

F.    An Order requiring Jarrow to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

G.    An Order requiring Jarrow to pay actual and punitive damages where permitted under law;

H.    An award of attorneys' fees and costs; and

I.    Any other and further relief that Court deems necessary, just, or proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 6, 2018

/s/ Paul K. Joseph

**LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd., No. 309
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*

*Shanks v. Jarrow Formulas, Inc.*
CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiff and the Proposed Class***

32